No. 105,109

In the Matter of MARLIN E. JOHANNING, *Respondent*.

(254 P.3d 545)

Opinion filed July 15, 2011.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the brief for the petitioner.

*Steven R. McConnell*, of McConnell & McMahon, P.A., of Overland Park, argued the cause and was on the brief for respondent, and *Marlin E. Johanning*, respondent, argued the cause pro se.

*Per Curiam*: This is a contested original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Marlin E. Johanning, an attorney admitted to the practice of law in Kansas in 1979.

On May 28, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on July 8, 2010. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on September 1, 2010, where the respondent was personally present and represented by counsel. The hearing panel determined the respondent violated KRPC 1.15 (2010 Kan. Ct. R. Annot. 505) (safekeeping property); 8.4(d) (2010 Kan. Ct. R. Annot. 603) (conduct prejudicial to the administration of justice); and Supreme Court Rule 211(b) (2010 Kan. Ct. R. Annot. 327) (failure to file timely answer in disciplinary proceeding). After the hearing's conclusion, the hearing panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"2. On April 14, 2009, the Atchison County District Court appointed the Respondent to represent Bryan Corkins in a pending criminal case. Mr. Corkins had been charged with theft of guns. The prosecutor alleged that Mr. Corkins took

possession of what he knew to be stolen property and attempted to dispose of the property by throwing the guns in a river.

"3. During the course of plea negotiations, the Respondent and Mr. Corkins understood that restitution would be a condition of a plea or of probation. As such, the Respondent instructed Mr. Corkins to make every effort to come up with restitution in order to put himself in the best position to negotiate a plea agreement.

"4. On May 18, 2009, while at the Atchison County Courthouse, Mr. Corkins provided the Respondent with $1,300.00 in cash. Mr. Corkins instructed the Respondent that that payment was to be offered as part of restitution. The Respondent provided a receipt to Mr. Corkins for the cash received for restitution.

"5. The Respondent did not deposit the $1,300.00 in his attorney trust account." [In a footnote, the hearing panel noted: "To date, the Respondent has not disclosed what happened to Mr. Corkins' $1,300.00. At the hearing on the Formal Complaint, the Respondent invoked his 5th Amendment privilege against self-incrimination and refused to answer questions regarding what he did with the $1,300.00."]

"6. While Mr. Corkins' criminal case remained pending, the Respondent anticipated that Mr. Corkins would add 'another impressive sum or two in rapid succession' thus improving the chances at a favorable plea agreement. However, Mr. Corkins did not provide any additional payments to the Respondent for restitution while the case was pending.

"7. On June 15, 2009, Mr. Corkins entered a plea of guilty to felony theft.

"8. On July 13, 2009, Judge Martin Asher sentenced Mr. Corkins. The Court ordered Mr. Corkins to serve eight months in prison. The Court, however, granted Mr. Corkins' request for probation from the prison sentence. Additionally, the Court ordered that Mr. Corkins pay restitution in the amount of $13,175.00, with payments to begin at the rate of $560.00 per month no later than August 13, 2009.

"9. After being placed on probation, sometime in July or August, 2009, Mr. Corkins called the Respondent to inquire about the $1,300.00 restitution payment. The Respondent told Mr. Corkins that he would forward the $1,300.00 for restitution to the court in 'the next few days.' However, the Respondent failed to do so.

"10. On August 24, 2009, Mr. Corkins provided his court services officer with a copy of the receipt that the Respondent gave to Mr. Corkins regarding the $1,300.00. At that time, the court services officer approached Judge Asher with a copy of the receipt.

"11. On August 25, 2009, 12 days after the first restitution payment was due, Judge Asher called the Respondent by telephone. Judge Asher asked the Respondent about the $1,300.00 he was holding for Mr. Corkins for restitution. The Respondent informed the judge that he would forward the money to the court 'in the next couple of weeks.'

"12. On that same day, the Respondent deposited $1,350.00 with the court for restitution in Mr. Corkins' case.

"13. Also on August 25, 2009, Judge Asher wrote to the Disciplinary Administrator and lodged a complaint against the Respondent. Thereafter, on September 4, 2009, the Respondent provided his written response to the complaint. In his written response, the Respondent stated:

'Occasionally, I will place clients' monies—be that filing fees or diversion fees, or other such fees—into an envelope in their file, rather than to deposit, immediately, those sums into my trust account. *This would be one of those instances.* (Emphasis added.)'

"14. On April 14, 2010, the Respondent responded to a letter from the Disciplinary Administrator's office. In the letter, rather than explain where the $1,300.00 went, the Respondent quoted the language included in ¶ 13 above. The Respondent also stated:

'The investigator seemed skeptical of such an answer at the time; and perhaps he has shared that skepticism with you. In essence, you have a stipulation to the fact that the monies did not ever make it to my trust account at the bank; and you also have the fact that Mr. Corkins's account was provided these monies on the day that Judge Asher directed his inquiry to me. The appearance of impropriety, here, would seem to sustain the filing of your complaint on the basis of what you know, already. Can you elaborate further as to the reason for your communication to me?

'If you find me too evasive, or obtuse, then it is apparent that I need to seek out my attorney to advise me in this matter, sooner, rather than later; and I do respectfully request that I be given time to counsel at length with a disciplinary-complaints experienced attorney who can advise me as to my rights and my options in this matter at this stage of the proceeding. In fact, that attorney might well be able to negotiate and/or give professional input prior to the ultimate filing of the complaint. That is to say in quite a different and clumsy way: He might help write the complaint. Does your office ever approach matters in that fashion, say, via a stipulated complaint? I believe that we can see the potential advantages of such an approach, don't you?'

"15. On May 28, 2010, the Disciplinary Administrator filed a Formal Complaint in this case. In the Formal Complaint, based upon the Respondent's statements in his letters, the Disciplinary Administrator alleged:

'5. Respondent elected to hold the cash, rather than deposit it in his trust account . . . .

'6. Respondent reports that he occasionally puts cash he receives into an envelope and keeps it in his office rather than putting it into a trust account and *this was one of those instances.* (Emphasis added.)'

"16. In his Answer, the Respondent stated:

'5. Respondent acknowledges that he should have deposited the $1,300.00 in his Trust Account instead of placing the funds in an envelope in his office.

'6. By way of further answer, Respondent states that this incident was an isolated event, and he has taken further steps to avoid this type of activity occurring the future.'

"17. At the hearing on this matter, the Respondent testified that he did not deposit the $1,300.00 into his attorney trust account. Additionally, the Respondent testified that he did not place the $1,300.00 in an envelope in Mr. Corkins' file.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.15, KRPC 8.4, and Kan. Sup. Ct. R. 211, as detailed below.

"2. Lawyers must keep the property of their clients safe. See KRPC 1.15. In this case, the Respondent failed to properly safeguard his client's property when he failed to deposit Mr. Corkins' $1,300.00 into the Respondent's attorney trust account. Later, on August 25, 2009, after the inquiry from Judge Asher, the Respondent forwarded $1,350.00 to the court for Mr. Corkins' restitution. Because the Respondent did not deposit Mr. Corkins' money into the Respondent's trust account or otherwise hold Mr. Corkins' money in trust, the Hearing Panel concludes that the Respondent violated KRPC 1.15. Additionally, because the Respondent did not even place Mr. Corkins' money in an envelope and place the envelope into Mr. Corkins' file (as he represented that he had done), the Hearing Panel concludes that the Respondent converted Mr. Corkins' money to his own use. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.15.

"3. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to timely forward Mr. Corkins' money to the court for restitution. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"4. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

"The Disciplinary Administrator served the Formal Complaint on May 28, 2010. The Respondent did not file his Answer to the Formal Complaint until July 8, 2010. Thus, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION STANDARDS
## FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or

actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his client to properly safeguard his client's property.

"*Mental State*. The Respondent knowingly and intentionally violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused potential injury to his client. The Respondent's misconduct placed his client in a position to be in violation of the terms and conditions of his probation, potentially jeopardizing the client's freedom.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses*. The Respondent has been disciplined on several occasions.

"1. On April 6, 1998, in DA6800, the Disciplinary Administrator informally admonished the Respondent for having violated MRPC 1.2, MRPC 1.3, MRPC 1.4, MRPC 1.7, and MRPC 1.8." [In a footnote, the hearing panel noted: "At the time the Respondent was disciplined in 1998, the rules of professional conduct were known as the Model Rules of Professional Conduct ('MRPC')."]

"2. The Disciplinary Administrator also informally admonished the Respondent on April 6, 1998, in DA6893. In that case, the Review Committee directed that the Disciplinary Administrator informal[ly] admonish the Respondent for having violated MRPC 1.3 and MRPC 1.4.

"3. On June 1, 2001, the Kansas Supreme Court censured the Respondent for having violated KRPC 1.3, KRPC 1.4, and KRPC 1.15 in DA7747. The Court's censure was published in the Kansas Reports at *In re Johanning*, 271 Kan. 638, 23 P.3d 895 (2001).

"4. On June 3, 2005, the Kansas Supreme Court placed the Respondent on probation for having violated KRPC 1.1, KRPC 1.3, and KRPC 3.2. The Court's opinion was published in the Kansas Reports at *In re Johanning*, 279 Kan. 950, 111 P.3d 1061 (2005).

"*Dishonest or Selfish Motive*. The Respondent's misconduct in this case was motivated by dishonesty and selfishness. Clearly, the Respondent used Mr. Corkins' money to his own benefit. To the Respondent's credit, he (eventually) made Mr. Corkins' whole by depositing $1,350.00 into the Court on August 25, 2009. However, it took a call from the judge on the case to get the Respondent to make the deposit with the court to be used for Mr. Corkins' restitution.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The Respondent failed to comply with the disciplinary rules by fully cooperating with the Disciplinary Administrator's office during the pendency of the Formal Complaint and by filing a timely Answer.

"*Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* On the subject of whether the Respondent submitted false evidence or false statements or engaged in other deceptive practices during the disciplinary process, the Hearing Panel is compelled to comment on Disciplinary Administrator's Exhibit 16 [stipulation of facts] and the Respondent's Answer to the Formal Complaint.

"Prior to the hearing on the Formal Complaint, the Respondent, his counsel, and the Deputy Disciplinary Administrator negotiated a stipulation of facts. Paragraph 6 was initially drafted to read as follows:

'Respondent reports that he occasionally puts client's money into an envelope in their file rather than immediately depositing into a trust account and that this *was* one of those instances.' [Emphasis added.]

Before signing it, the Respondent changed the word 'was' to 'would be.' On questioning by the Hearing Panel, the Respondent stated that the term 'would be' was substituted to indicate that it was 'hypothetical.' When pressed, the Respondent admitted that, in this particular instance, the client's funds were *not* placed into an envelope.

"Changing 'was' to 'would be' does not change the meaning of the paragraph. Regardless of whether the paragraph reads 'was' or 'would be' the implication is clear. The Respondent intended the reader to believe that he placed Mr. Corkins' $1,300.00 in an envelope and placed the envelope into Mr. Corkins' file." [In a footnote the hearing panel observed: "This is the same crafted language used by the Respondent in his correspondence with the Disciplinary Administrator."] The Respondent did not do that. The Respondent took Mr. Corkins' money and converted it to his own use. The Respondent's word game amounts to another deceptive practice." [In another footnote, the hearing panel observed: "In fact, the Respondent posited during questioning by the Hearing Panel that his exercise may appear 'Clintonesque,' resonating with the Supreme Court's decisions in *In re Miller,* 282 Kan. 689, 695, 147 P.3d 150 (2006); *In re Pyle,* 278 Kan. 230, 241, 91 P.3d 1222 (2004)."]

"The Respondent submitted an Answer to the Formal Complaint that contains false statements.

'5. Respondent acknowledges that he should have deposited the $1,300.00 in his Trust Account instead of placing the funds in an envelope in his office.

'6. By way of further answer, Respondent states that this incident was an isolated event, and he has taken further steps to avoid this type of activity occurring in the future.'

First, the Respondent did not place the $1,300.00 into an envelope in Mr. Corkins' file. The Respondent's statement that he placed the money in an envelope is false and misleading. Second, the Respondent stated that his placing the $1,300.00 in an envelope rather than in his trust account was an isolated event. Regardless of the fact that the Respondent did not place the $1,300.00 in an envelope in this case, the Respondent admitted in his initial response to the complaint that he

'[o]ccasionally' placed clients' monies in envelopes and placed the envelopes in the clients' files. It is not an isolated event to engage in conduct 'occasionally.'

"*Vulnerability of Victim.* Mr. Corkins was vulnerable to the Respondent's misconduct. His liberty was in jeopardy as a result of the Respondent's conduct. Mr. Corkins' vulnerability aggravates the Respondent's misconduct in this case.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 1979 and, thus, he has 31 years of experience practicing law. Therefore, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Hearing Panel received and reviewed two letters from the Respondent's colleagues. From the letters, the Hearing Panel concludes that the Respondent previously enjoyed a good reputation in Atchison, Kansas.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.2    Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be indefinitely suspended from the practice of law. Counsel for the Respondent recommended that the Respondent be placed on probation pursuant to Kan. Sup. Ct. R. 211(g). That rule provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respon-

dent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

'(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

'(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii) the misconduct can be corrected by probation; and

'(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"In order for the Hearing Panel to be permitted to recommend to the Kansas Supreme Court that the Respondent be placed on probation, the Respondent is required to establish each of the items listed in Kan. Sup. Ct. R. 211(g)(3). In this case, the Respondent failed to establish each of the required items, thus, the Hearing Panel lacks authority to recommend probation.

"First, the Respondent failed to develop a workable, substantial, and detailed plan of probation. The Respondent's plan of probation is not sufficient to fully address the Respondent's misconduct.

"The Respondent failed to put the proposed plan of probation into effect prior to the hearing on the Formal Complaint. The Respondent testified that he had one telephone call with the proposed supervisor and that he met with the proposed supervisor for less than one hour, two days prior to the Formal Hearing in this case. Counsel for the Respondent argued that he also visited with the proposed supervisor regarding the supervision. Initial conversations about whether the proposed supervisor would agree to supervise and initial conversations about whether the contents of the plan of supervision are appropriate and sufficient do not amount to implementing the plan. Thus, the Hearing Panel concludes that the Respondent failed to put the plan of probation into effect.

"Further, the Respondent's misconduct cannot be corrected by probation. Taking a client's funds and failing to put [them] into an attorney trust account cannot be prevented by any term of probation.

"Finally, placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. The Respondent has been repeatedly disciplined by the Kansas Disciplinary Administrator and the Kansas Supreme Court. Yet, despite the extensive disciplinary history, including a pre-

vious 18-month probation, he continues to fail to properly safeguard his client['s] property.

"Based upon the items included in Kan. Sup. Ct. R. 211(g)(3), the Hearing Panel, therefore, concludes that probation is not appropriate in this case.

"In determining what discipline to impose, it is important to consider the Respondent's previous experience, instruction, and discipline related to trust account matters. The Respondent has been repeatedly instructed to properly handle client monies.

"In the 2001 disciplinary case, the Hearing Panel recommended that the Respondent:

'immediately establish an accounting system to track client funds held in trust. The Hearing Panel recommends that the Office of the Disciplinary Administrator conduct an audit on the Respondent's trust account on or before April 1, 2001, to ensure that the Respondent has established an accounting system to track client funds and is in compliance with KRPC 1.15.' *In re Johanning*, 271 Kan. 638, 642 (2001).

"The Court adopted the Hearing Panel's recommendation and ordered the Respondent to

'establish an accounting system to track client funds held in trust and that the office of the Disciplinary Administrator conduct an audit on the respondent's trust account on or before July 1, 2001, to ensure that the respondent has established an accounting system to track client funds consistent with the provisions of KRPC 1.15.' *Johanning*, 271 Kan. at 642.

"According to the Respondent's testimony, the audit by the Disciplinary Administrator's office was performed by a retired IRS agent. The Disciplinary Administrator's auditor is Robert Straub, a retired IRS agent. From the Respondent's testimony, it appears that Mr. Straub instructed the Respondent regarding how to properly establish and maintain an attorney trust account.

"Finally, following the Respondent's 2005 discipline, he was on probation for 18 months. During the period of probation, the Respondent's practice, including the Respondent's trust account, was supervised by another attorney.

"Despite the Hearing Panel's recommendation in 2001, the Kansas Supreme Court's order in 2001, the audit by Mr. Straub, and the supervision following the 2005 discipline, the Respondent testified at the instant hearing that he needs assistance in establishing and maintaining his attorney trust account. The prior recommendations, supervision, and orders should have been enough intervention for the Respondent to be able to properly establish and maintain his attorney trust account. Because these interventions were insufficient to educate the Respondent regarding how to properly establish and maintain his attorney trust account, [it] is clear that the Respondent needs to be removed from the practice of law.

"Thus, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of one year. The Hearing Panel

further recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219, prior to consideration for reinstatement.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## RESPONDENT'S EXCEPTIONS

On November 15, 2010, the respondent filed exceptions to the final hearing report. See Supreme Court Rule 212(d) (2010 Kan. Ct. R. Annot. 344). Specifically, he took exception to the hearing panel's conclusions concerning his violation of KRPC 8.4(d) (2010 Kan. Ct. R. Annot. 603) (conduct prejudicial to the administration of justice) and Supreme Court Rule 211(b) (2010 Kan. Ct. R. Annot. 327) (failure to file timely answer in disciplinary proceeding). He also took exception to the hearing panel's conclusions regarding two aggravating factors: bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary process and vulnerability of the victim. Finally, with regard to the subject of the appropriate discipline, the respondent took exception to the hearing panel's conclusion that "[t]aking a client's funds and failing to put [them] into an attorney trust account cannot be prevented by any term of probation."

The respondent did not argue all of these exceptions in his brief, however. Rather, he raises only two issues for this court's consideration: (1) whether there was clear and convincing evidence to support the hearing panel's conclusion that the respondent violated KRPC 8.4(d) and (2) whether there was clear and convincing evidence to support the hearing panel's determination that the respondent violated Supreme Court Rule 211(b). By not arguing the other exceptions he had raised, the respondent has abandoned those exceptions. See *In re Bishop*, 285 Kan. 1097, 1106, 179 P.3d 1096 (2008) (a respondent who does not advance arguments or provide record citations to support exceptions to the final hearing report is deemed to have abandoned the exceptions).

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they

do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Miller*, 290 Kan. 1075, 1084-85, 238 P.3d 227 (2010); *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

In his brief to this court, the respondent does not dispute the factual findings of the hearing panel. Further, the respondent admits that he violated "KRPC 1.5," which he presumably means to be KRPC 1.15 (2010 Kan. Ct. R. Annot. 505) (safekeeping property), the disciplinary rule cited by the hearing panel in the final hearing report. Because the respondent does not dispute such violation, the violation of KRPC 1.15 is deemed admitted. Supreme Court Rule 212(c) (2010 Kan. Ct. R. Annot. 344).

*KRPC 8.4(d) Violation*

The first of the preserved exceptions relates to the hearing panel's determination that respondent violated KRPC 8.4(d), which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." KRPC 8.4(d) (2010 Kan. Ct. R. Annot. 603). The hearing panel found: "In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to timely forward Mr. Corkins' money to the court for restitution."

The respondent acknowledges that because of his actions, his client's restitution payment was 12 days late, but he argues that a delay of 12 days was not prejudicial to the administration of justice and, therefore, should not be considered misconduct. In making this argument, the respondent focuses on the lack of any consequence to his client because the payment was late. This focus ignores the impact on his client, the theft victim, the probation officer, and the judge.

More specifically, even though Corkins did not suffer punitive consequences, he was unnecessarily placed in noncompliance with the conditions of his probation and the payment plan established

by the district court—a plan to make the victim whole again. See *State v. Hall*, 45 Kan. App. 2d 290, 247 P.3d 1050 (2011). Corkins had to defend himself just as he was beginning a probationary process, and the probation officer had to deal with the noncompliant probationer and then intercede and take the issue to the district judge. In turn, the judge had to deal with the report. Ultimately, the victim was deprived of the use of funds for a period of time because of the respondent's delay in paying the money into court. While the delay was not significant, it impacted everyone involved in the issue, and the delay would have been worse if not for the judge's initiative in inquiring about the missing funds.

The respondent's actions obstructed Corkins' compliance with a court order and damaged others' confidence in the judicial system. In other situations where an attorney has obstructed another's compliance with a court order or engaged in conduct unbecoming a court officer, we have found a violation of KRPC 8.4(d). See *In re Lober*, 291 Kan. 394, 399, 241 P.3d 81 (2010) (respondent violated KRPC 8.4[d] when he failed to take action on behalf of client); *In re Jensen*, 286 Kan. 1160, 1167, 191 P.3d 1118 (2008) (respondent violated KRPC 8.4[d] when he instructed subpoenaed witness that he need not appear in court unless he heard from respondent); *In re Pyle*, 283 Kan. 807, 815, 156 P.3d 1231 (2007) (respondent's unrestrained statements violated KRPC 8.4[d] by " 'prejudic[ing] justice in a general sense by lessening the public confidence in our disciplinary system' "); see also *In re Dennis*, 286 Kan. at 735-36 (respondent's repeated failure to comply with court orders and discovery deadlines in two actions violated KRPC 8.4[d]); *In re Coder*, 272 Kan. 758, 763, 35 P.3d 853 (2001) (respondent violated KRPC 8.4[d] when he failed to object or assert defense, failed to appear in court, failed to comply with court orders, and failed to provide discovery).

Clear and convincing evidence establishes the charged misconduct of the respondent and supports the hearing panel's conclusion that the respondent violated KRPC 8.4(d).

*Supreme Court Rule 211(b) Violation*

The respondent also disputes the hearing panel's determination that he violated Supreme Court Rule 211(b), which provides, in part, that "[t]he respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel." Supreme Court Rule 211(b) (2010 Kan. Ct. R. Annot. 327).

The hearing panel found that this rule was violated because the Disciplinary Administrator served the formal complaint on May 28, 2010, and the respondent did not file his answer to the formal complaint until July 8, 2010. In his brief, the respondent points out that he requested an extension of time to file his answer and received an e-mail indicating the hearing panel had granted him until July 8, 2010, to file his answer. He contends that he did not violate Supreme Court Rule 211(b) because his answer was filed "within the time frame extended by the Panel."

In response, the Disciplinary Administrator concedes that disciplinary counsel was copied on the e-mail granting the respondent until July 8, 2010, to answer. The Disciplinary Administrator notes that the extension was never formally journalized and for that reason the extension may not have come to the hearing panel's attention when it prepared its findings. Nevertheless, the Disciplinary Administrator agrees that the evidence does not support a finding that the respondent violated Supreme Court Rule 211(b).

Because the respondent sought and received an extension of time to file his answer to the formal complaint and because he met the extended deadline, the hearing panel's determination that he violated Supreme Court Rule 211(b) is not supported by clear and convincing evidence.

## DISCIPLINE

With respect to the discipline to be imposed, the hearing panel's recommendation that the respondent be sanctioned with a 1-year suspension with the requirement of a reinstatement hearing is "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the

Disciplinary Administrator." Supreme Court Rule 212(f) (2010 Kan. Ct. R. Annot. 345); see *In re Depew*, 290 Kan. 1057, 1073, 237 P.3d 24 (2010). The disciplinary sanction must be based on the specific facts and circumstances of the violations and the aggravating and mitigating circumstances presented in the case. *In re Swanson*, 288 Kan. 185, 214, 200 P.3d 1205 (2009).

The respondent requests a lighter penalty than the hearing panel's recommended discipline of a 1-year suspension. He suggests a lighter penalty is appropriate because the Rule 211 violation is not supported, he has shown strong mitigating factors, and the disciplinary action was publicized in his community and yet no further complaints have been filed. The Disciplinary Administrator recommends a harsher discipline of indefinite suspension.

As we weigh the proposed discipline, there are several considerations that lead us to conclude indefinite suspension is warranted. First, as the hearing panel noted, this is not an isolated incident. By the respondent's own omission he "occasionally" places money in a client's file rather than in his trust account. This mishandling of client property follows repeated attempts by the disciplinary system to educate and supervise the respondent. In *In re Johanning*, 271 Kan. 638, 23 P.3d 895 (2001), this court directed the "office of the Disciplinary Administrator [to] conduct an audit of the respondent's trust account on or before July 1, 2001, to ensure that the respondent has established an accounting system to track client funds consistent with the provisions of KRPC 1.15." *Johanning*, 271 Kan. at 642. The respondent admits the audit was conducted, and the auditor instructed him on how to establish and maintain an attorney trust account. Then, according to the respondent, the attorney who supervised the probation that followed his 2005 discipline monitored the respondent's trust account. Our files reflect that even though the court placed the respondent on probation on June 3, 2005, for an 18-month period, the respondent was not discharged from probation until December 18, 2008. *In re Johanning*, 287 Kan. 685, 199 P.3d 1251 (2008); *In re Johanning*, 279 Kan. 950, 111 P.3d 1061 (2005). In other words, he had been counseled about the need for trust accounting for over 7 years. Despite those efforts by others, exactly 6 months after his discharge

from probation, the respondent accepted money from Corkins but did not properly account for it in a trust account. Clearly, past attempts to educate and encourage a modification of behavior have failed.

Second, the respondent's attempt to finesse the wording of the stipulation and his misstatements in his answer are extremely troubling. As the hearing panel noted, the respondent stated in his answer: " '5. Respondent acknowledges that he should have deposited the $1,300.00 in his Trust Account *instead of placing the funds in an envelope in his office.*' " (Emphasis added.) In fact, he did not place the money in an envelope. The next paragraph of the respondent's answer is equally misleading. He stated: " '6. By way of further answer, Respondent states that this incident was an isolated event, and he has taken further steps to avoid this type of activity occurring in the future.' " He later admitted he had placed money in a file on other occasions. Then, when the Disciplinary Administrator prepared a stipulation using the wording of paragraph 6 of the answer, the respondent attempted to create his hypothetical. We are as perplexed as was the hearing panel as to how changing "was" to "would be" changed the meaning of the paragraph or made the wording a hypothetical. Clearly, the wording was misleading, and we find the misrepresentations and the attempt to disguise the misstatements as a "hypothetical" to be egregious conduct.

Third, we are concerned that the respondent does not fully appreciate the seriousness of his misconduct. In the respondent's comments to the court, he suggested that we allow him to practice but limit his practice to cases where he is appointed by the court to represent the indigent. He suggests that he rarely receives client property in these cases. Yet, the matter that led to this discipline was a criminal case in which the respondent was appointed counsel. The respondent's suggested solution minimizes his misconduct and reflects a failure to recognize that an attorney who accepts a client's money—regardless of whether the attorney is retained or appointed—has an obligation to account for those funds.

Finally, we note the hearing panel's finding that the respondent's conduct was intentional.

For these reasons, we conclude indefinite suspension is warranted.

CONCLUSION

IT IS THEREFORE ORDERED that Marlin E. Johanning be indefinitely suspended from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370), and in the event respondent seeks reinstatement, he shall comply with Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.