IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,150

In the Matter of PAUL F. GOOD,
*Respondent.*

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held May 15, 2025. Opinion filed August 8, 2025. Indefinite suspension.

*Gayle B. Larkin*, Disciplinary Administrator, argued the cause and was on the formal complaint and brief for petitioner.

*Paul F. Good,* respondent, argued the cause and was on the brief pro se.

PER CURIAM: This is an attorney discipline proceeding against Paul F. Good, of Wichita, who was admitted to practice law in Kansas in September 1985.

On May 10, 2024, the Office of the Disciplinary Administrator (ODA) filed an amended formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On June 29, 2024, the respondent filed an answer to the amended formal complaint. The respondent filed exceptions to numerous findings of fact and conclusions of law. An appointed panel held a formal hearing on the complaint, during which respondent personally appeared. The hearing panel determined the respondent violated KRPC 8.4(b) (2025 Kan. S. Ct. R. at 426) (misconduct involving a criminal act); 8.4(d) (misconduct prejudicial to the administration of justice); and 8.4(g) (misconduct that reflects adversely on fitness to practice law), as well as Supreme Court Rule 219(c) and (d) (2025 Kan. S. Ct. R. at 267) (duty to report criminal charge or conviction).

1

FACTUAL AND PROCEDURAL BACKGROUND

The relevant portions of the final hearing report are set forth below.

"*Findings of Fact*

"21.    The hearing panel finds the following facts, by clear and convincing evidence:

"DA 13,838:  Butler County Case No. 21-CR-281

"22.    On August 9, 2021, the respondent was charged in Butler County with one count of nonresidential burglary, a level 7 person felony, and one count of theft, a class A nonperson misdemeanor, in Butler County case number 21 CR 281.

"23.    The respondent reported these charges to the disciplinary administrator's office on August 16, 2021.

"24.    The charges were based on the respondent's conduct on August 7, 2021.

"25.    The respondent acknowledged during his testimony at the formal hearing that he had been consuming alcohol the evening of August 7, 2021. He placed an online order for food from Sonic, and walked to the Sonic to pick up the food he had ordered.

"26.    The respondent entered the Sonic between 11:00 and 12:00 p.m. and an alarm went off. Despite this, the respondent walked up to the counter, where no employees were present, and made himself a drink. He then took receipts that were on the counter and left to find food elsewhere.

"27.    According to an Andover Police Report, the Andover Police were dispatched to the Sonic after the alarm went off due to the respondent's entry to the Sonic at 11:46 p.m. The responding officer saw the respondent inside the Sonic, saw him exit

2

the Sonic, and stopped the respondent outside a nearby Kentucky Fried Chicken restaurant. The officer observed that the respondent appeared to be heavily intoxicated, as the respondent was swaying, had slurred speech, and appeared to have trouble walking. The respondent had Sonic receipts in his pockets.

"28.    During the pendency of the Butler County 21 CR 281 criminal case, the district court entered a bench warrant and order of bond forfeiture based on the respondent's failure to appear at a scheduled hearing on November 22, 2021.

"29.    Later, on January 21, 2022, the Butler County Attorney's Office filed a motion to revoke or modify the respondent's bond alleging the respondent violated a SCRAM monitoring condition by consuming alcohol on multiple occasions. The respondent stipulated to the bond violation. The court modified the respondent's bond by adding conditions.

"30.    On February 23, 2022, the respondent was convicted upon a plea of no contest and found guilty by the Butler County District Court of one count of criminal trespass, a class B nonperson misdemeanor, in Butler County case number 21 CR 281.

"31.    The respondent did not report his conviction in Butler County case number 21 CR 281 to the disciplinary administrator's office.

"DA 13,838:  Sedgwick County Case No. 22-CR-460

"32.    On March 28, 2022, the respondent was charged in Sedgwick County District court with aggravated battery, a severity level 7 person felony, case number 22 CR 460.

"33.    On May 3, 2022, the respondent reported the charge in 22 CR 460 to the disciplinary administrator's office.

"34.    These charges were based on the respondent's conduct on March 23, 2022.

3

"35.     The respondent testified during the formal hearing that the evening of March 23, 2022, he was experiencing severe pain from a snapped Achilles tendon. He acknowledged that he had consumed two airplane bottles of vodka that evening. At one point in the evening, the respondent said he blacked out from the pain in his ankle and was transported by ambulance to the local emergency room. After becoming upset with hospital personnel because he believed they had examined and treated the wrong foot and also because he said the doctor believed the respondent was only there to receive pain medication, the respondent was told to leave the hospital or he would be issued a notice of trespass.

"36.     The respondent received assistance from a person outside the hospital in order to walk to the nearest Quik Trip. The respondent testified that the hospital would not allow him to use a phone to call for a ride home, so he planned to ask to use a phone at the Quik Trip. The respondent became upset at the Quik Trip after the staff there would not allow him to purchase food for the person who had helped him walk there, and also because the staff would not allow him to use a phone to call for a ride home.

"37.     A security office[r] employed by Quik Trip escorted the respondent out of the store after the respondent purchased cigarettes and Altoids. The respondent asked the security office[r] for a ride home, which was denied. The respondent also asked persons at the gas pumps for a ride home, but was unsuccessful. While the security officer escorted the respondent from the Quik Trip premises, the respondent swung the plastic bag containing the cigarettes and Altoids in frustration. The Altoids flew from the bag and struck the security officer in her face, causing a laceration and significant bleeding.

"38.     On June 13, 2023, the respondent was found guilty by a jury and convicted in Sedgwick County case number 22 CR 460 of one count of battery, a class B misdemeanor.

"39.     The respondent was sentenced to 6 months in jail, which was stayed while the respondent served 24 months on probation.

4

"40.     The respondent reported his conviction in Sedgwick County case number 22 CR 460 to the disciplinary administrator's office within 14 days.

"DA 14,011:  Misconduct on April 22, 2023, in Bel Aire

"41.     On April 22, 2023, around 1:40 a.m., a Bel Aire police officer was dispatched to a residence. The person at the residence had contacted police stating there was a man who they did not know at their door who seemed intoxicated and was asking to enter the residence.

"42.     The Bel Aire officer arrived and found the respondent lying down in the entryway to the residence with abrasions on his ankles. The respondent told the officer he was at the residence for a child custody issue in his capacity as a lawyer. The officer observed the respondent was intoxicated and the respondent admitted to the officer that he was drunk. Afterward, the respondent was transported home.

"DA 14,011:  Bel Aire Municipal Case No. 2023-00224

"43.     Late on April 23, 2023, the respondent struck a parked Jeep with his vehicle on a street in Bel Aire, causing damage to the Jeep. The responding police officer reported that the respondent told the officer that he had taken a Percocet around 8:00 p.m.

"44.     The respondent submitted to a breath test, which revealed a .166 blood alcohol level.

"45.     During the formal hearing, the respondent testified that earlier in the evening on April 23, 2023, he went to an event and accepted a Percocet from a friend, although he could not recall for sure that it was a Percocet. After this, the respondent consumed alcohol. He drove to a parking lot and slept in his car. The respondent woke up in a lot of pain and decided to drive home. It was then that he hit the parked Jeep.

"46.     On June 7, 2023, the respondent was arraigned in Bel Aire Municipal Court on one count [of] driving under the influence and for driving without insurance and improper lane use.

5

"47.    On July 11, 2023, the respondent reported the charge in Bel Aire Municipal Court to the disciplinary administrator's office.

"48.    The respondent entered a guilty plea in Bel Aire Municipal case number 2023-00224 to one count of DUI on October 4, 2023.

"49.    On January 4, 2024, the respondent was sentenced to six months in jail, which was stayed while the respondent served 12 months on probation.

"Respondent's Substance Abuse Disorder and Treatment

"50.    During the formal hearing, the respondent testified that he suffers from a substance abuse disorder. The substance at issue, according to the respondent, is alcohol.

"51.    The respondent claimed during his testimony that as of the formal hearing, he had been sober 952 days. However, the respondent said that he calculates that time period based on the first date he stopped drinking alcohol and subtracting any days that he 'slips' and consumes alcohol. The respondent does not start over the count of days of sobriety after a date he 'slips' and consumes alcohol.

"52.    The respondent said he believed his beginning date of sobriety was in April 2022. However, the respondent acknowledged that he drank alcohol to intoxication on April 22nd and 23rd of 2023, consumed alcohol sometime in the summer of 2023, and drank to intoxication on July 17, 2024.

"53.    The respondent acknowledged that all three of his criminal convictions discussed in this disciplinary matter involved his consumption of alcohol.

"54.    The respondent testified that he has attended treatment for his substance abuse disorder, including an outpatient program at Valley Hope in June and July 2021. He successfully completed that outpatient program and was discharged. Since his discharge from that program, he has attended Alcoholics Anonymous 2 to 4 times per week. He has also participated in alcohol addiction counseling.

6

"55.     Disciplinary administrator's exhibit 27 contains numerous emails between the respondent and Ms. Larkin, as well as a number of emails to and from opposing counsel in the respondent's court cases on which he copied Ms. Larkin even after she asked him to stop. One email the respondent copied Ms. Larkin on was the respondent's correspondence with a car salesman.

"56.     The respondent also sent Ms. Larkin an email in which he claimed that a disciplinary investigator and KALAP staff contacted the respondent's probation officer in his criminal case and questioned whether the respondent completed all alcohol and drug tests, threatened to subpoena the probation officer to testify at the formal hearing, and called the respondent a 'drunk paranoid.'

"57.     Ms. Larkin inquired with the disciplinary investigator and KALAP staff member and learned that no such communication occurred from either of them. The respondent continued to claim that this communication occurred during the formal hearing, but when questioned whether he had evidence of it, did not produce any.

"58.     On July 14, 2024, in the midst of emails between the two to arrange a meeting to discuss a summary submission agreement in the case, the respondent sent Ms. Larkin an email that said, 'Pleasee [*sic*] call my cell. I have pancreatic CANCE [*sic*] ANS [*sic*] WILL DIE SHORTLY.' The respondent also copied Ms. Larkin on correspondence with opposing counsel in one of the respondent's representations where the respondent told opposing counsel that he had pancreatic cancer. The respondent told Ms. Larkin, 'I will send you lab reports soon.'

"59.     Later, the respondent emailed Ms. Larkin, 'I WILL BE DEAD SHORTLY SO T AKE [*sic*] ME OF [*sic*] YOUR TODO LIST PLEASE[.]'

"60.     Ms. Larkin emailed the respondent after receiving these messages, offering to assist the respondent with transferring his law license to disabled status if the respondent provided her with a doctor's letter evidencing his medical condition. Ms.

7

Larkin's emails to the respondent show several attempts to reach him by phone and her inability to leave a voicemail because the respondent's voicemail inbox was full.

"61.     The respondent emailed Ms. Larkin several times, including an email containing the statement, 'I have pancreatic cancer and needvmy [*sic*] jicens [*sic*] pulled please.'

"62.     As time went on, the language in the respondent's emails to Ms. Larkin became aggressive and intimidating. In one email, sent on July 18, 2024, the respondent wrote, 'I am here but I think you want consel [*sic*] as a [*sic*] I am very an=gry [*sic*].'

"63.     On July 22, 2024, the respondent sent Ms. Larkin an email that said, 'Bye, talk to Nancy Landis of the 10th circuit. Don't have the strength to read this. The US system is bankrupt. Do you want me to do the same thing I just did to Biden?' Other emails were sentence fragments that were nonsensical.

"64.     During his formal hearing testimony, Ms. Larkin asked the respondent what he did to President Biden. The respondent stated he did nothing to President Biden. The respondent stated that he did not know why he wrote that email, that he was frustrated and without his anxiety medication at the time.

"65.     The respondent copied Ms. Larkin on emails with opposing counsel and district court staff, which also contained aggressive and intimidating language. In response to an email from a judge's administrative assistant scheduling a motion hearing, the respondent replied:

> 'Should be done by then unless Kritz is a bone head. We can and must get this done ASAP. You know I am not healthy,br8se [*sic*] is healthier that [*sic*] you and I, you and I have to do our jobs with two people we disagree with. Next week and I apologize. Unethical conduct frankly. U don't want to go toe to me please. PS-I am going on disability as a licensed attorney.'

"66.     He also copied Ms. Larkin on an email with opposing counsel where he told opposing counsel, 'I am loaded and ready. Sorry, this is just being professional. I like

8

you but you are not going to like me shortly.' Earlier in that same email, the respondent made statement[s] to opposing counsel that included the following, 'Otherwise, find yourself a helmet,' and 'If you want to fight, let's just get this done that way.'

"67.     Further, the respondent copied Ms. Larkin on an email with a car dealer in which the respondent wrote, 'Maybe, best price first offer, you do not want to mess with me ;>).'

"68.     On July 29, 2024, the respondent filed a motion to continue the formal hearing. Ms. Larkin filed a response to the motion on July 30, 2024, objecting to a continuance. On July 31, 2024, the respondent sent an email to Ms. Larkin and others, including all three members of the hearing panel and the KBDA@kscourts.org board of discipline [a] filing email that stated:

'Ms. Larkin,

'You want war, I am going to war. I will have counsel by Monday. [T]hank you for your so kind attention. Do not mess with me, you just did. I will see you at the hearing. I am so satisfied with the Government and their treatment of me. You want to know me, ask US Attorney Greg Hough. I am or may not have represented he and his family but please don't piss him off. God bless[.]

'PS-Judge Steven Johnson, what do you think of this process?'

"69.     When Ms. Larkin asked the respondent about this email during his testimony, the respondent agreed the language he used in this email was intimidating and apologized for the email, acknowledging it was inappropriate.

"70.     Later that same evening, the respondent sent another email to all of the same parties that stated:

'Guys, thank you so much more from a sick man richer than any of you will ever be, I will go to my psychiatrist at least tomorrow and get you an effin report. Great job you Good people. Thanks so much, again FOR YOUR kind

9

ATTENTION. And INCREDIBLE PEOPLE SKILLS. I AM SICK, YOU ARE DEMANDING, I CANNOT QUIT WORK TILL I FINSISH [*sic*] THIS CASE IN NEODESHA COUNTY, God blessxoxooxzo oz.

'PS-Guess[.]'

"71.　Later that evening, the respondent sent Ms. Larkin another email that read:

'I do not have pancreatic cancer, pancreatitis. I hate doctors, even though my dad served on the state board for 20 years and almost all my family are doctors. I got diagnosed with pancreatic cancer without an MRI, and I got my oldest brother involved, Dr. Frederick C. Good, retires [*sic*] Special Forces Colonel, to step in and I have ceased seeing doctors for a couple weeks. Still have a ruptured Achilles and mental issues but otherwise, feeling fairly mean and please tell everyone not to mess with me. God bless.'

"*Conclusions of Law*

"72.　Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(b) (misconduct involving a criminal act); 8.4(d) (misconduct prejudicial to the administration of justice); and 8.4(g) (misconduct that reflects adversely on fitness to practice law), as well as Supreme Court Rule 219 (c) and (d) (duty to report criminal charge or conviction), as detailed below.

"KRPC 8.4(b)

"73.　'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b).

"74.　In this case, the respondent committed three crimes that also constitute violation of KRPC 8.4(b).

10

"75.    On February 23, 2022, the respondent was convicted in the Butler County case number 21 CR 281 of one count of criminal trespass, a class B nonperson misdemeanor.

"76.    On June 13, 2023, the respondent was found guilty by a jury and convicted in Sedgwick County case number 22 CR 460 of one count of battery, a class B misdemeanor.

"77.    The respondent entered a guilty plea and was convicted in Bel Aire Municipal case number 2023-00224 to one count of DUI on October 4, 2023.

"78.    The crimes of which the respondent was convicted adversely reflect on his honesty, trustworthiness, or fitness as a lawyer in other respects.

"79.    Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"KRPC 8.4(d)

"80.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"81.    The respondent failed to appear in court as ordered on November 22, 2021, in his criminal case, Butler County case number 22 CR 281. The Court issued a bench warrant for the respondent's arrest and issued a $7,500.00 personal recognizance bond with additional conditions as a result.

"82.    The respondent's failure to appear in court in his criminal case, resulting in a bench warrant, is conduct prejudicial to the administration of justice.

"83.    Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(d).

11

"KRPC 8.4(g)

"84. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g).

"85. On April 22, 2023, the respondent was found by Bel Aire police intoxicated and lying down in the entryway to a residence of a person who did not know the respondent. The resident at the home told police the respondent had asked to enter the residence.

"86. The respondent told the officer he was at the residence for a child custody issue in his capacity as a lawyer. The officer observed the respondent was intoxicated and the respondent admitted to the officer that he was drunk. Afterward, the respondent was transported home.

"87. The respondent acknowledged during the formal hearing that he was not at the residence in his capacity as a lawyer and that he did not remember much from that night as he was intoxicated.

"88. This conduct reflects adversely on the respondent's fitness to practice law.

"89. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(g).

"Rule 219 (c) and (d)

"90. 'An attorney who has been charged with a reportable crime must notify the disciplinary administrator in writing of the charge and court of jurisdiction no later than 14 days after the charge is filed.' Supreme Court Rule 219(c).

"91. The disciplinary administrator alleged, and the respondent admitted in his answer to the amended formal complaint, that the respondent did not report that he

12

was charged with a felony in Sedgwick County case number 22 CR 460 until May 3, 2022, which was 36 days after the charge was filed.

"92.     The disciplinary administrator alleged that the respondent did not report that he was charged with a DUI in Bel Aire Municipal Court until July 11, 2023, which was 34 days after the respondent was arraigned and 79 days after his initial arrest.

"93.     During his testimony at the formal hearing, the respondent admitted that he did not timely report the Bel Aire charge to the disciplinary administrator's office.

"94.     'An attorney who has been convicted of a reportable crime must notify the disciplinary administrator in writing of the conviction and court or jurisdiction no later than 14 days after the conviction. The pendency of sentencing or the filing of a notice of appeal, a motion for new trial, or a motion for other relief does not stay the reporting requirement.' Supreme Court Rule 219(d).

"95.     The disciplinary administrator alleged, and the respondent admitted in his answer to the amended formal complaint, that the respondent did not report his conviction in Butler County case number 21 CR 281 to the disciplinary administrator's office.

"96.     Accordingly, the hearing panel concludes that the respondent violated Supreme Court Rule 219.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"97.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

13

"98.     *Duty Violated*. The respondent violated his duty to the public to maintain his personal integrity and to the legal profession to timely report criminal charges and convictions.

"99.     *Mental State*. The respondent knowingly violated his duty.

"100.     *Injury*. The respondent's violation caused physical injury to the Qui[k] Trip security officer, property damage to the owner of the Jeep, and potential damage to other members of the public through his misconduct. The respondent caused potential injury to the legal profession by failing to timely report his criminal charges and conviction.

"101.     In addition to the above-cited factors in Standard 3, the hearing panel has thoroughly examined and considered the following Standards:

'5.12     Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

'6.22     Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.'

'6.23     Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.'

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.'

'7.3     Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"Aggravating and Mitigating Factors

"102.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following with regard to aggravating factors:

"103.    *A Pattern of Misconduct*. The respondent was convicted in three separate criminal cases. Each of these crimes occurred while the respondent was under the influence of alcohol. The respondent's DUI conviction was his third conviction of DUI. The hearing panel concludes the respondent engaged in a pattern of misconduct. This is an aggravating factor.

"104.    *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas in 1985. At the time of the misconduct, the respondent had been practicing law for more than 36 years. This is an aggravating factor.

"105.    *Illegal Conduct, Including that Involving the Use of Controlled Substances*. The respondent's three criminal convictions constitute three separate instances of illegal conduct. This is an aggravating factor.

"106.    *Intimidating Language and Evasive Conduct in Disciplinary Case*. The respondent used language in his email communications with the disciplinary administrator and the hearing panel that was unduly aggressive and intimidating in nature. The respondent acknowledged and apologized for this during the formal hearing. Further, the respondent represented during the disciplinary process multiple times that he was diagnosed with pancreatic cancer and expected to die soon. Later, the respondent acknowledged that this was not true. The respondent's intimidating and evasive

15

communications created unnecessary work and delay in his disciplinary case and is an aggravating factor.

"107.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"108.    *Absence of a Prior Disciplinary Record*. The respondent has not been disciplined during the more than 36 years of practice prior to his misconduct in this matter. This is a mitigating factor.

"109.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from a substance abuse disorder that the respondent said is triggered by anxiety. It is clear that the respondent's substance abuse disorder contributed to his misconduct, as all three criminal cases involved his consumption of alcohol. This is a mitigating factor.

"110.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar in Wichita, Kansas. The respondent enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel. This is a mitigating factor.

"111.    *Imposition of Other Penalties or Sanctions*. The respondent has experienced other sanctions for his conduct. The respondent was convicted and received sentences in all three criminal cases. This is a mitigating factor.

"*Recommendation of the Parties*

"112.    The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of one year. The disciplinary

16

administrator also recommended that the respondent be required to undergo a hearing under Rule 232 prior to reinstatement.

"113.    The respondent recommended that he be censured.

"*Recommendation of the Hearing Panel*

"114.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for a period of one year. The hearing panel also recommends that the respondent be required to undergo a hearing under Rule 232 prior to reinstatement.

"115.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the panel's findings, and the parties' argument to determine whether violations exist and, if they do, the discipline that should be imposed. Attorney misconduct must be established by clear and convincing evidence. See *In re Daniels*, 320 Kan. 365, 376, 568 P.3d 846 (2025); Supreme Court Rule 226(a)(1)(A) (2025 Kan. S. Ct. R. at 275). Clear and convincing evidence is evidence that leads the fact-finder to believe it is highly probable that the asserted facts are true. See *Daniels*, 320 Kan. at 376.

A finding is considered admitted if no exception is taken. When an exception is taken, the finding is typically not deemed admitted and the court must determine whether clear and convincing evidence supports it. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017). The court will not disturb a finding that clear and convincing evidence supports. The court does not reweigh conflicting evidence, assess witness credibility, or

17

redetermine questions of fact when undertaking its factual analysis. *In re Hawver*, 300 Kan. 1023, 1038, 339 P.3d 573 (2014).

The respondent received adequate notice of the formal complaint and filed a timely response. The Disciplinary Administrator filed an amended complaint including new allegations of disciplinary rule violations, and respondent filed an answer to the amended complaint.

After the panel issued its final hearing report, respondent filed exceptions. His exceptions do not contradict the panel's conclusions but instead apparently seek to expand on the findings or provide a context for his conduct. By asking us to reconsider the weight or context of the facts, rather than disputing the facts themselves, respondent is essentially asking this court to reweigh evidence, which is something we do not do. See *Daniels*, 320 Kan. at 376. Furthermore, respondent waived many of his exceptions because he did not brief them. See *In re Johanning*, 292 Kan. 477, 486, 254 P.3d 545 (2011) (by failing to argue exceptions in his brief, respondent abandoned those exceptions); *In re Jones*, 286 Kan. 544, 548, 186 P.3d 746 (2008) (when respondent admits to factual allegations in the formal complaint and does not cite to record in his or her brief or argue the findings of fact to which he or she has filed exceptions are not supported by the record, those exceptions are deemed abandoned).

Respondent asserts he did not knowingly engage in misconduct. He offers explanations for his behavior that focus on intoxication and physical discomfort, maintaining he did not intend the consequences of his actions, such as running into another car or striking a security employee in the face with a metal container. We have consistently held, however, that individuals are presumed to intend all the natural consequences of their acts. See, e.g., *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

In his exceptions, respondent demonstrates that he is unwilling or unable to take responsibility for his conduct. He blames medical personnel, convenience store staff, Disciplinary Administrator's staff, district court staff, and bad luck for much of his misconduct.

On the one hand, he expresses remorse and says he assumes responsibility for his actions. On the other hand, he says others provoked him and he did not "knowingly" engage in any misconduct, insisting he "did not knowingly commit any crime, except driving under the extreme influence of alcohol on the DUI case." He asserts he has attended AA meetings since May 2022 and has done his "level best . . . to refrain from alcohol." He nevertheless was involved in two incidents after that time in which he was severely intoxicated, one of them resulting in a criminal conviction.

He also maintains that none of the conduct giving rise to this proceeding involved representing clients, his conduct did not impair the rights of any clients, and he obtained no financial gain from his conduct. While this may be true with respect to particular clients, he claimed he was acting as a lawyer when he showed up intoxicated at a stranger's door in the early hours of the morning, and he caused physical injury to the security officer and to a vehicle belonging to another person. A lawyer is bound by the Kansas Rules of Professional Conduct in "'every capacity in which the lawyer acts, whether acting as a lawyer or not.'" *Jones*, 286 Kan. at 550 (quoting *State v. Russell,* 227 Kan. 897, 902, 610 P.2d 1122, *cert. denied* 449 U.S. 983 [1980]).

Respondent informs the court that he is flourishing in AA and is a new person. But he also tells us that he stopped consuming alcohol and voluntarily received out-patient treatment for alcohol abuse in June and July 2021, which was before all of the incidents at issue in this proceeding. He has not demonstrated an ability to follow through with his good intentions.

Even more troubling are the communications that respondent made to the Disciplinary Administrator during the course of the investigation into his case. These included semi-coherent statements asserting that respondent had terminal cancer, which was not true, emails expressing anger toward the Disciplinary Administrator, and veiled threats such as, "Do you want me to do the same thing I just did to Biden?" He also made threatening comments to other attorneys, such as, "I am loaded and ready," and, "If you want to fight, let's just get this done that way." These messages were sent during a time when respondent contends he was sober and was finding "a new outlook and joy" and was "very much generally at peace."

Finally, respondent demonstrated either diminished competence to practice law or a disregard for the judicial process by ignoring or failing to read the Kansas Supreme Court Rules for filing briefs. His brief to this court did not conform to rules for format and content—it lacked a cover and table of contents, it included an improper attachment that is not part of the record on appeal, and it failed to key factual assertions to the record on appeal. A respondent's failure to comply with appellate rules in submitting exceptions and in briefing is a factor this court may consider when finding professional failings and in imposing sanctions. See *In re Huffman*, 315 Kan. 641, 687-88, 509 P.3d 1253 (2022).

We determine that respondent knowingly violated the disciplinary rules as found by the hearing panel. He engaged in conscious and intentional conduct, including acts that led to criminal convictions, that violated the standards for professional conduct. This conduct adversely reflected on his honesty, trustworthiness, and fitness as a lawyer and was prejudicial to the administration of justice.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Paul F. Good is indefinitely suspended from the practice of law in the state of Kansas, effective the date of this opinion, in accordance

20

with Supreme Court Rule 225(a)(2) (2025 Kan. S. Ct. R. at 274), for violations of KRPC 8.4(b), KRPC 8.4(d), and KRPC 8.4(g), as well as Rule 219(c) and (d).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2025 Kan. S. Ct. R. at 285).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Rule 232 (2025 Kan. S. Ct. R. at 286) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

WILSON, J., not participating.