No. 103,535

In the Matter of CHARLES T. FRAHM, *Respondent.*

(241 P.3d 1010)

Opinion filed November 19, 2010.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the brief for the petitioner.

*John H. Fields*, of Kansas City, Kansas, argued the cause and was on the brief for respondent, and *Charles T. Frahm*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Charles T. Frahm, of Lenexa, an attorney admitted to the practice of law in Kansas in 1997. Respondent's license to practice law in Kansas was temporarily suspended on April 1, 2008; the suspension remains in effect.

On June 23, 2008, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on July 11, 2008, an amended answer on August 26, 2009, and his proposed plan of probation on October 1, 2009. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 14, 2009, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 8.4(b) (2010 Kan. Ct. R. Annot. 603) (misconduct). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

"2. On July 20, 2006, the Respondent, in an intoxicated state, drove his white Acura erratically on I-35 in Johnson County, Kansas. The Respondent sped up and slowed down, swerving from lane to lane. Angel Zubia and his pregnant wife, Yolanda Escamilla, occupied another car on I-35. The Respondent's car clipped

the Zubia's car, causing the Respondent's car to collide with the retaining wall separating the highway, his rear bumper to come off his car, and his car to spin around.

"3. The contact between the cars caused Mr. Zubia's car to swerve out of control and to roll. The Respondent, aware that he was in an intoxicated state but unaware that Mr. Zubia's car had been struck, drove away from the accident.

"4. Mr. Zubia suffered minor injuries. Ms. Escamilla was transported to a hospital for treatment. Ms. Escamilla also suffered minor injuries.

"5. The officers responding to the scene observed the license tag on the detached bumper. The officer learned that the license plate belonged to the Respondent.

"6. An off-duty police officer, Sgt. Kevin Cauley, driving his personal car, observed the damage to the Respondent's car, including the fact that the Respondent's car had no rear bumper. Sgt. Cauley also observed Respondent driving and suspected that the Respondent was intoxicated.

"7. Sgt. Cauley called the police dispatcher and followed the Respondent to his residence.

"8. Sgt. Cauley approached the Respondent and handcuffed him until on-duty police officers arrived.

"9. The Respondent denied being involved in a car accident and refused to take field sobriety tests. Later, though, at the police station, the Respondent agreed to take a breath alcohol concentration test. The Respondent's breath alcohol concentration was .204.

"10. On July 21, 2006, the Johnson County District Attorney's office charged the Respondent with driving under the influence of alcohol, reckless driving, leaving the scene of an accident, and two counts of aggravated battery. Aggravated battery is a level 8 person felony. The remaining charges are misdemeanors.

"11. On February 26, 2008, following a bench trial, the Respondent was convicted of driving under the influence of alcohol, reckless driving, leaving the scene of an accident, and two counts of aggravated battery, reckless, not intentional.

"12. On April 1, 2008, on the Disciplinary Administrator's motion, the Kansas Supreme Court temporarily suspended the Respondent's license to practice law in the State of Kansas, pursuant to Kan. Sup. Ct. R. 203(c)(4).

"13. On April 25, 2008, the Respondent motioned the court to vacate the temporary suspension. The Court denied the Respondent's motion.

"14. On May 9, 2008, Johnson County District Court Judge Peter Ruddick sentenced the Respondent to serve seven days in the county jail, to serve eight months in the state prison, and to pay a fine. The Court granted the Respondent's request for probation from the prison sentence.

"15. In return for the Respondent's agreement not to file an appeal, the Johnson County District Attorney requested that the Court set aside the Respondent's convictions for reckless driving and leaving the scene of an accident. The Johnson County District Court granted the request, and the Respondent's convictions for reckless driving and leaving the scene of an accident were set aside.

"16. On May 19, 2008, the Respondent requested that the Kansas Supreme Court reconsider its order temporarily suspending the Respondent. The Court denied the Respondent's request to reconsider.

"17. The Kansas Board for Discipline of Attorneys scheduled a Formal Hearing in this case for August 20, 2008. Prior to the hearing, counsel for the Respondent requested that the hearing be continued indefinitely for a family health issue. Because the Respondent's license to practice law was under suspension, the Disciplinary Administrator asserted no objection. A hearing on the Formal Complaint was conducted on October 14, 2009.

"18. The Respondent's license to practice law in the State of Kansas continues to be suspended.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4, as detailed below.

"2. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent was convicted of driving under the influence of alcohol and two counts of aggravated battery. The commission of driving under the influence of alcohol and aggravated battery adversely reflects on the Respondent's fitness as a lawyer in other respects. Accordingly, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the public to maintain his personal integrity.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to the public and to the legal profession. Specifically, the Respondent's misconduct caused injury to Mr. Zubia and Ms. Escamilla. Luckily, Mr. Zubia and Ms. Escamilla had their seat belts on at the time the Respondent's car struck their car. Because they had their seat belts on, the injuries suffered by Mr. Zubia and Ms. Escamilla were minor. Also, luckily, the couple's child was later born healthy. The potential for serious injury or death in this case, however, was great. Finally, Mr. Zubia's car suffered extensive damage.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factor present:

"*Illegal Conduct*. The Respondent engaged in illegal conduct when he drove his vehicle while his breath alcohol concentration was .204 and when he struck Mr. Zubia's car, caused Mr. Zubia's car to roll, and caused physical injury to Mr. Zubia and Ms. Escamilla and property damage to Mr. Zubia's car. Generally, the conduct that is prohibited by the Kansas Rules of Professional Conduct is wide ranging—some more serious and some less serious. As an officer of the court, however, it is particularly egregious for an attorney to engage in criminal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record*. The Respondent has not previously been disciplined.

"*Absence of a Dishonest or Selfish Motive*. The Respondent's conduct was not motivated by dishonesty or selfishness.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The Respondent testified about the problems that he suffered during the relevant time period—his broken relationship and his concern that he had cancer. As a result of the personal problems, the Respondent sought individual therapy. The day he committed the crimes, he received upsetting news regarding his former fianc. After learning the news, the Respondent drank an excessive amount of alcohol.

"*Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*. Following the accident, the Respondent urged his insurance company to provide Mr. Zubia and Ms. Escamilla with settlement monies. Mr. Zubia and Ms. Escamilla received approximately $50,000 in settlement proceeds.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The Respondent fully cooperated during the disciplinary investigation and hearing.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The Respondent enjoys the respect of his friends, acquaintances, and peers as evidenced by letters received by the Hearing Panel.

"*Imposition of Other Penalties or Sanctions*. The Respondent has suffered other penalties as a result of this matter. The Respondent has suffered a loss of income based upon the temporary suspension. The Respondent has suffered the humiliation associated with the notification that he sent to his clients, opposing counsel, and courts regarding his temporary suspension. While he served only seven days in jail, the Respondent faced a longer term of imprisonment in the state prison

system. The Respondent paid fines and court costs and completed the terms of his probation. The Respondent repeatedly submitted to drug and alcohol tests. The Respondent served a term of probation with regard to his Missouri license to practice law. Finally, the Respondent paid attorney fees in both the criminal and disciplinary matters.

"*Remorse.* At the hearing on this matter, the Respondent expressed genuine remorse. Additionally, the witnesses presented by the Respondent reinforced the Respondent's remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

In the opinion of the Hearing Panel, convictions for aggravated battery, level 8 person felonies, seriously adversely reflects on the Respondent's fitness to practice law.

## "RECOMMENDATION

"At the conclusion of the evidence, counsel for the Respondent recommended that no violation be found and that the case be dismissed. After the Hearing Panel concluded that a rule violation was committed, counsel for the Respondent recommended that the Respondent be informally admonished or, in the alternative, placed on probation. The Disciplinary Administrator recommended that the Respondent be indefinitely suspended.

"In order to recommend that a Respondent be placed on probation, the Hearing Panel must conclude that the Respondent developed a workable, substantial, and detailed plan of probation and provided a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint; that the Respondent put the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan; that the misconduct can be corrected by probation; and that placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. Kan. Sup. Ct. R. 211(g)(3).

"The Hearing Panel is unable to recommend that the Respondent be placed on probation because placing a convicted felon on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. Further, at this point, the Respondent has completed all of the terms and conditions of probation and placing the Respondent on probation would serve no purpose.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended for a period of 18 months. The Hearing Panel recommends that the effective date of the 18-month suspension be made retroactive to the date of the

Respondent's temporary suspension, April 1, 2008, allowing the Respondent to be reinstated immediately upon motion to the Court.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties. From this record, we determine whether violations of KRPC exist and, if they do, what discipline should be imposed. *In re Daugherty*, 285 Kan. 1143, 1163, 180 P.3d 536 (2008). Attorney misconduct must be established by clear and convincing evidence. *In re Patterson*, 289 Kan. 131, 133-34, 209 P.3d 692 (2009); Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."' " *In re Patterson*, 289 Kan. at 134 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

This court considers the hearing panel's findings of fact, conclusions of law, and recommendations to be advisory but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. *In re Angst*, 278 Kan. 500, 503-04, 102 P.3d 388 (2004). When the record before the hearing panel supports its findings of fact and those findings support its conclusions of law, this court typically adopts the panel's findings of fact and conclusions of law. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009).

The respondent filed exceptions to the report and recommendations of the hearing panel. The matter is now before this court, pursuant to Supreme Court Rule 212 (2010 Kan. Ct. R. Annot. 344), for review of the following: (1) whether the facts establish a violation of KRPC 8.4(b) by clear and convincing evidence; (2) whether the hearing panel's finding 15, that the criminal court set aside the respondent's convictions for reckless driving and leaving the scene of an accident for his agreement not to file an appeal, is supported by clear and convincing evidence; and (3) whether the recommended discipline is more harsh than justified by the facts of the case.

*KRPC 8.4(b) Violation*

KRPC 8.4 provides:

"It is professional misconduct for a lawyer to:

. . . .

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

The hearing panel found:

"In this case, the Respondent was convicted of driving under the influence of alcohol and two counts of aggravated battery. The commission of driving under the influence of alcohol and aggravated battery adversely reflect on the Respondent's fitness as a lawyer in other respects."

The respondent challenges this conclusion. He argues that his conduct was not intentional, had no nexus with the practice of law, and did not display a pattern of criminal behavior. He maintains that if his crimes reflect adversely on his fitness as a lawyer "in other respects," then every crime falls under KRPC 8.4(b), rendering the qualifying language "that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" meaningless excess verbage.

In the first place, the respondent's criminal conduct was neither trivial nor technical. He committed multiple transgressions. He was driving while highly intoxicated. He caused both personal injury and property damage. He left the scene of the accident because he hoped he could thereby avoid prosecution for driving while intoxicated. Finding that his criminal act reflected adversely on his fitness as a lawyer does not require a conclusion that *all* criminal acts reflect adversely on professional fitness.

Nevertheless, a Kansas attorney who commits a felony is likely to face disciplinary measures. In *In re Trester*, 285 Kan. 404, 414, 172 P.3d 31 (2007), this court noted:

"[W]hen an attorney has been convicted of a felony offense, this court, with very few exceptions, imposes either suspension or disbarment as a sanction. *In re Howlett*, 266 Kan. 401, 403, 969 P.2d 890 (1998); see also *In re Nelson*, 255 Kan. 555, 563, 874 P.2d 1201 (1994) (citing several cases of attorney sanctions following felony convictions); see also Supreme Court [Rule] 203(c) (2006 Kan. Ct. R. Annot. 243) (requiring temporary suspension pending final disciplinary action if respondent has been convicted of a felony)."

Respondent argues there was no nexus between his criminal conduct and his professional fitness because the crimes had minor consequences and because they did not relate directly to the practice of law. This court has held, however, that the legal profession by its nature demands compliance with the laws governing the behavior of citizens:

"Any violation of the law creates some question about the trust and confidence that the public may reasonably be expected to place in a lawyer. No matter what the violation, some discipline may be required to deter the attorney involved and other members of the bar." *In re Robertson*, 256 Kan. 505, 507, 886 P.2d 806 (1994).

In *In re Laskowski*, 282 Kan. 710, 147 P.3d 135 (2006), this court noted that the respondent was convicted of felony DUI. "Although not a breach of a professional duty to a client, it violated his primary duty to the court and the bar, and it erodes the public confidence in the judicial system." *In re Laskowski*, 282 Kan. at 713-14.

In *In re Hoare*, 155 F.3d 937 (8th Cir. 1998), the court considered discipline of an attorney who drove while intoxicated on the wrong side of a highway and caused a fatal accident. The court concluded:

"Such conduct, when committed by an officer of the court, constitutes a failure to maintain personal integrity, reflects upon one's fitness to practice law, and brings the bench and the bar into disrepute. [Citations omitted.] Offending conduct need not involve direct questions of honesty or trustworthiness, nor have an immediate relation to the daily business conducted by an attorney, in order to warrant substantial discipline. [Citations omitted.]" *In re Hoare*, 155 F.3d at 940.

Attorneys are officers of the court. Society may reasonably expect that the trust and confidence placed on those that practice law also requires compliance with the law. We need not reach the question of whether a felony conviction is a per se violation of KRPC 8.4(b) because under these facts, respondent's conduct clearly constitutes a KRPC 8.4(b) violation.

*Hearing panel finding 15*

The hearing panel made the following factual finding:

"15.   In return for the Respondent's agreement not to file an appeal, the Johnson County District Attorney requested that the Court set aside the Respondent's

convictions for reckless driving and leaving the scene of an accident. The Johnson County District Court granted the request, and the Respondent's convictions for reckless driving and leaving the scene of an accident were set aside."

The Disciplinary Administrator suggests that the hearing panel's factual findings should be adopted when the evidence supports the findings. The evidence does not support one detail of the finding. Respondent points out that the convictions were set aside not only as a quid pro quo for agreeing not to appeal, but also "in the interest of justice." This is consistent with the transcript of the sentencing hearing.

The respondent concedes that this issue is "a minor point, not at all dispositive, and only partially incorrect." He argues, however, that the hearing panel's finding "may tend to cast [him] in somewhat of a bad light." He argues that he might have succeeded in winning an appeal of those two convictions and agreeing not to appeal was not merely a gift but had some legal support.

While this may be the case, it is the conduct that warrants discipline, not the technicality of the conviction. In *Robertson*, 256 Kan. 505, the attorney was tried for several felonies relating to purchasing cocaine from an undercover police agent. A jury found him not guilty, apparently on the basis of entrapment. The attorney was nevertheless made subject to discipline.

In a disciplinary proceeding, a criminal conviction is conclusive evidence of the commission of that crime. Supreme Court Rule 202 (2010 Kan. Ct. R. Annot. 272); *In re Angst*, 278 Kan. at 504. The record in the present case is silent regarding what "the interest of justice" was that led to setting aside the charges. There is no dispute that the respondent drove recklessly and left the scene of the accident. Although the convictions were set aside both for the interest of justice and in exchange for waiving an appeal, the conduct nonetheless remained the same and warrants disciplinary action.

*Appropriate Sanction*

The respondent contends that both the hearing panel's recommended discipline of an 18-month suspension and the Disciplinary Administrator's recommended discipline of indefinite suspension

are harsher than the facts justify. Specifically, he takes exception to the hearing panel's findings regarding actual injury to the public and the legal profession.

The hearing panel found:

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to the public and to the legal profession. Specifically, the Respondent's misconduct caused injury to Mr. Zubia and Ms. Escamilla. Luckily, Mr. Zubia and Ms. Escamilla had their seat belts on at the time the Respondent's car struck their car. Because they had their seat belts on, the injuries suffered by Mr. Zubia and Ms. Escamilla were minor. Also, luckily, the couple's child was later born healthy. The potential for serious injury or death in this case, however, was great. Finally, Mr. Zubia's car suffered extensive damage."

The respondent contends that the injuries to Zubia and Escamilla were minor, and injuries to individuals should not be considered in the same light as injuries to the public as a whole or to the legal profession as a whole. He does not explain why injuries to two individuals are not to be regarded as injuries to the public; the extension of his argument would be that an injury to the public requires a lawyer to engage in conduct that results in harm to large swaths of the population. Respondent also does not explain why injuries to individuals do not harm the legal profession. See *Robertson*, 256 Kan. at 507 (any violation of the law undermines trust and confidence that public places in lawyer). Furthermore, the American Bar Association Standard 3.0 quoted by the hearing panel refers to "the actual or *potential* injury caused by the lawyer's misconduct." (Emphasis added.) The potential injury from driving while intoxicated and running into other vehicles is quite high.

The respondent also argues that his conduct was unintentional and that criminal conduct should not be considered an "aggravating factor" for the criminal conduct that brought him before the hearing panel in the first place. While it might be circular to accuse him of criminal conduct *and* to use the existence of criminal conduct as an aggravating factor, it is the nature of the criminal conduct that is an aggravating factor. Four convictions may be an aggravating factor, as compared with one. Whether the criminal conduct was intentional is subservient to the fact that the respon-

dent willfully became intoxicated and put others at risk of great harm by his conduct.

In *In re Laskowski*, this court indefinitely suspended an attorney who was convicted on three occasions of driving while intoxicated. *In re Laskowski*, 282 Kan. at 714. The respondent seeks to distinguish his situation, noting that he did not engage in a *pattern* of criminal conduct. Unlike the respondent in *Laskowski*, however, the respondent caused injury and property damage and was convicted of multiple offenses.

The American Bar Association Standards for Imposing Lawyer Sanctions set out a range of conduct and corresponding recommended disciplinary action:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Standard 5.11.

"Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." Standard 5.12.

"Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." Standard 5.13.

"Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law." Standard 5.14.

The respondent notes that ABA Standard 5.11, relating to disbarment, does not apply because his conduct did not directly interfere with the system of justice, was not a major felony, and was not intentional. He contends that ABA Standard 5.12, relating to suspension, does not apply because his conduct did not "seriously adversely reflect" on his fitness to practice. He also contends that ABA Standard 5.13, relating to reprimand, does not apply because his conduct did not involve dishonesty, fraud, deceit, or misrepresentation. By default, it is the respondent's position that the only

remaining discipline would stem from ABA Standard 5.14, admonition.

This court is not persuaded by respondent's parsing of the ABA Standards. Nor do respondent's exceptions to the panel's findings alter our determination of the appropriate discipline to be imposed. As discussed above, the respondent's conduct was in violation of KRPC 8.4(b), a finding which requires, at a minimum, that the criminal act adversely reflect on the lawyer's fitness to practice law. Under the facts of this case, respondent's misconduct seriously adversely reflects on his fitness to practice law.

"The panel's recommendation for discipline is advisory only, and it does not constrain this court from imposing a greater or lesser penalty." *In re Depew*, 290 Kan. 1057, 1073, 237 P.3d 24 (2010). The respondent's criminal conduct was neither trivial nor technical. He committed multiple transgressions. He was driving while highly intoxicated. He caused both personal injury and property damage. He left the scene of the accident because he hoped he could thereby avoid prosecution for driving while intoxicated.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Charles T. Frahm be suspended from the practice of law in the state of Kansas for a period of 3 years to be effective from April 1, 2008, which was the date of his temporary suspension, in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370), and in the event the respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

PATRICIA MACKE DICK, District Judge, assigned.